**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOE LUIS CHAPPA,

    Petitioner,

-vs-                                                Case No.  8:04-CV-0469-T-30EAJ

JAMES McDONOUGH,[1]

    Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner's Motion to Temporarily Stay the Proceedings (Dkt. 22).  Petitioner wants to return to state court to exhaust a claim of "newly discovered" evidence that he asserts establishes that the DNA evidence presented during his trial was unreliable. Petitioner relies on the decisions in *Rhines v. Weber*, 544 U.S. 269 (2005), *Bevil v. State*, 875 So.2d 1265 (Fla. 1st DCA 2004), and *Moss v. State*, 860 So.2d 1007 (Fla. 5th DCA 2003), in support of his request for a stay.  For reasons discussed below, the Court finds Petitioner's argument unpersuasive.

District courts may order a stay and abeyance of mixed petitions only "in limited circumstances." *Thompson v. Sec. for Dep't of Corrs.*, 425 F.3d 1364, 1365-66 (11th Cir. 2005) (citing *Rhines*, 544 U.S. at 270 (finding that "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims.")).  A stay and abeyance is warranted where

---

[1] James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

"(1) the petitioner had 'good cause' for failing to exhaust the claims in state court; (2) the unexhausted claims are 'potentially meritorious;' and (3) 'there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.'" *Id.* at 1366 (citation omitted). In the instant case, Petitioner has not met the second prong of this test by demonstrating that his challenge to the reliability of the State's DNA evidence is "potentially meritorious."

In *Bevil*, the defendant prevailed on a motion to suppress the state's DNA evidence on grounds that the Florida Department of Law Enforcement ("FDLE") database used to compute DNA population frequencies relied on by the state's expert witness was known to produce inaccurate results. During the pretrial *Frye*[2] hearing, Defendant adduced testimony by the FDLE analyst who performed the DNA testing that the FDLE's population database was validated by an independent consultant in 1999, and FDLE first began using it to compute DNA population frequencies in 2000. The analyst and the FDLE's forensic service director testified, however, that the independent consultant subsequently discovered errors in the database which caused the FDLE to discontinue using it pending the completion of a reexamination of the program, which had not been accomplished yet.

In the instant case, the offense of conviction occurred on June 1, 1998, and Petitioner's conviction was entered following a jury trial on May 14, 1999. Since the FDLE's database was not placed in service until 2000, its deficiencies are not material to Petitioner's conviction.

The *Moss* case is likewise unavailing. Moss was convicted in 1985 for kidnaping, two counts of armed robbery, and first degree murder. During his trial, three agents from the FBI Crime Laboratory testified for the state. On April 15, 1997, the Office of the

---

[2] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

Inspector General ("OIG"), Department of Justice, issued a report entitled "The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives-Related and Other Cases" (hereinafter the "*OIG Report*"). The three agents who testified during Moss's trial were employed at the FBI Laboratory during the period covered by the OIG's investigation. *See Moss v. State*, 860 So.2d at 1008.

In 1996, the Criminal Division of the Department of Justice ("DOJ") established a task force to work with prosecutors on cases affected by the allegations of wrongdoing in the FBI Laboratory to ensure that the government fulfilled its obligations to provide defendants with exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150(1972). In those cases in which one of the 13 laboratory examiners criticized in the *OIG Report* analyzed evidence, the prosecutors were contacted and provided a copy of portions of the report germane to their case, as well as the laboratory reports of forensic work performed by FBI personnel. The prosecutors were asked to review the materials and any other information they had related to their cases to determine if the agent's laboratory work was material to the outcome of the case. When the state attorney who prosecuted Moss learned about the *OIG Report*, he directed that the information not be shared with Moss. According to Moss, he did not learn about the *OIG Report* until his case was referenced in newspaper articles published on March 4 and 5, 2001. The state appellate court remanded the case to the trial court, finding that the allegations in Moss's Rule 3.850 motion and the OIG and FBI investigations warranted a review by the trial court of the "new evidence" in the context of all the evidence at trial. *Moss v. State*, 860 So.2d at 1011.

Petitioner's argument that this matter should be stayed while he attempts to convince the state court that a 1997 report about improprieties by FBI Crime Laboratory

personnel constitutes "newly discovered evidence"[3] which warrants a new trial where the offense of conviction did not occur until June 1, 1998, more than two years after corrective measures were instituted at the FBI Crime Laboratory and a year after the *OIG Report* was made public is unpersuasive. Moreover, there is no indication in the record, and Petitioner does not allege, that either of the two witnesses who testified during his trial regarding DNA testing was employed by or otherwise associated with any agency or individual named in the *OIG Report*.

Petitioner has failed to demonstrate that holding this proceeding in abeyance is warranted. A stay would merely prolong federal habeas review to no avail, in contravention of AEDPA's goal of "finality and speedy resolution of federal petitions." *Rhines*, 544 U.S. at 278.

ACCORDINGLY, the Court **ORDERS** that Petitioner's Motion to Temporarily Stay the Proceedings (Dkt. 22) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on July 5, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:

*Pro se* Petitioner
SA/jsh

---

[3]The *OIG Report* was made available to the public on the internet the day it was released, *see* Press Release, Dep't of Justice, Office of Inspector General, DOJ 97-151A, 1997 WL 178421 (Apr. 14, 1997). *See also Buenoano v. State*, 708 So.2d 941 (Fla. Mar. 26, 1998) (considering application for state post-conviction relief based on documents pertaining to the OIG investigation of the FBI Crime Laboratory).