# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOE LUIS CHAPPA,

      Petitioner,

v.                                 CASE NO:  8:04-CV-469-T-30EAJ

JAMES McDONOUGH,

      Respondent.

_____/

## ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 1999 convictions for trespass of a structure with a human being present and sexual battery entered in the Thirteenth Judicial Circuit Court, Hillsborough County, Florida (Dkt. 1). Respondent has filed a response to the petition (Dkt. 7), and Petitioner has filed a reply thereto (Dkt. 14).  The matter is now before the Court for consideration on the merits. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section § 2254 Cases 8(a).

### Background

On June 16, 1998, Petitioner was charged by Information with one count of burglary of a dwelling with assault or battery (Count I) and sexual battery (Count II)  (Dkt. 7, Ex. 17, Vol. I at R. 13-17). During Petitioner's first trial, held on November 19 and 20, 1998, he was represented by Assistant Public Defenders Dee Ann Athan and Kimberly Kohn.  The trial ended in a mistrial due to a hung jury (Dkt. 7, Ex. 17, Vol. III - Vol. IV).

Petitioner, represented by Assistant Public Defenders Adam Levy and Vanessa Nye, proceeded to a second trial on May 12, 1999 (Dkt. 7, Ex. 17, Vol. V at Tr. 1 - Vol. IX at Tr. 708). The jury found Petitioner guilty of the lesser offense of trespass of a structure with a human being present on Count I and as charged on Count II (Dkt. 7, Ex. 17, Vol. I at R. 97-98; Vol. IX at Tr. 704-705).  On June 14, 1999, the trial court sentenced Petitioner to time served on Count I and to a term of 30 years in prison as a habitual felony offender on Count II, with credit for time served (Dkt. 7, Ex. 17, Vol. I at R. 173-180).

Represented by a special public defender, Petitioner raised five claims of trial court error on direct appeal (Dkt. 7, Ex. 1). Petitioner's convictions and sentences were affirmed on January 19, 2001, per curiam, with the mandate issuing on February 23, 2001. *See Chappa v. State*, 782 So. 2d 873 (Fla. 2d DCA 2002) (table decision); Dkt. 7, Ex. 4.

Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Criminal. P. 3.850 on April 26, 2001, raising four claims of ineffective assistance of trial counsel and one claim of trial court error, citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (Dkt. 7, Ex. 5). Petitioner amended his Rule 3.850 motion on October 10, 2001, to add a fifth claim of ineffective assistance of counsel (Dkt. 7, Ex. 7).

In a written order setting out the standard for evaluating claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court summarily denied Petitioner's *Apprendi* claim on November 26, 2001, and directed the State to file a response to Petitioner's ineffective assistance of counsel claims. Having the benefit of the State's response to the motion, on April 10, 2002, the trial court issued a final written order denying the original and amended Rule 3.850 motions (Dkt. 7, Ex. 11).  On May 14, 2003,  the state appellate court entered a per curiam decision without written opinion affirming the trial court's denial of Petitioner's Rule 3.850 (Dkt. 7, Ex. 13). *Chappa v. State*,

856 So. 2d 988 (Fla. 2d DCA 2003) (table decision). Petitioner's  motion for rehearing, incorporating a request for a written opinion pursuant to Fla R. App. P. 9.330(a), was denied on June 13, 2003 (Dkt. 7, Ex. 15). The mandate issued on July 11, 2003 (Dkt. 7, Ex. 16).

Petitioner filed the instant request for federal habeas relief on March 11, 2004 (Dkt. 1). He raises ten grounds for relief: the five issues raised on direct appeal and five of the six grounds raised in his Rule 3.850 proceedings. Respondent concedes that the petition is timely, but asserts that it should be denied because Petitioner fails to meet the criteria for relief under § 2254 (d) and (e).

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002).

This Court cannot presume that a Florida court ignores its own procedural rules when it issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman v. Thompson* , 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e).

### Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Where, as here, a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of Petitioner's claim.  *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

### Exhaustion

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. Where a petitioner has not "fairly presented" a federal constitutional claim to the state court, he has failed to exhaust his state court remedies. *Anderson v. Harless*, 459 U.S. 4 (1982); *Rose v. Lundy*, 455 U.S. 509

(1982); *Picard v. Connor*, 404 U.S. 270 (1971). The Supreme Court has rejected the theory that by presenting the facts on which an alleged constitutional violation is based a petitioner implicitly raises the claim. *Anderson v. Harless*, 459 U.S. at 6. The petitioner must make the state court aware that the claims asserted present federal constitutional issues. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998).

The failure of a federal habeas petitioner to adhere to state procedural rules will bar federal review of those claims in a subsequent federal habeas corpus proceeding. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary,* 155 F.3d 1297, 1311 (11th Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. *See Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1989).

**Grounds One, Two, Three, Four, and Five**

Petitioner raised Grounds One through Five on direct appeal. Nevertheless, Petitioner is not entitled to a review of these claims on the merits because the claims are unexhausted and therefore procedurally barred.

In Ground One, Petitioner alleges that the trial court erred in denying his motion for a continuance without conducting a *Richardson*[1] hearing following the disclosure of a State discovery violation related to the DNA evidence (Dkt. 7, Ex. 1 at 22-25). Petitioner contends in Ground Two that the trial court erred in allowing State witnesses to refer to Selena Valdez as mentally handicapped or as a "victim," in violation of its order granting the defense's

---

[1]In *Richardson v. State*, the Florida Supreme Court held that  upon learning of a possible violation of the discovery requirements of the criminal rules, the trial court must conduct a hearing to determine whether there was noncompliance with the rule, and if so, whether it resulted in prejudice to the ability of the defendant to properly prepare for trial.  246 So.2d 771, 775 (Fla. 1971). *See State v. Evans*, 770 So.2d at 1183 ("During a *Richardson* hearing, the trial court must inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation.").

motions in limine. Next, Petitioner contends in Ground Three that the trial court erred in allowing nurse examiner Sylvia Franklin to testify regarding the victim's prior consistent statements, several of which implicated Petitioner as her attacker. In Ground Four, Petitioner alleges that the trial court erred in denying his motion for judgment of acquittal because the State lacked substantial, competent evidence to sustain a conviction. Finally, in Ground Five, Petitioner contends that the prosecutor made improper comments during trial and closing argument.

Petitioner defaulted these grounds by not raising the federal dimension thereof in a timely manner both at trial and on direct appeal. The issues Petitioner presented on direct appeal were pressed only in state law terms.

Pursuant to *Duncan v. Henry*, 513 U.S. 364 (1995), briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds.  As the *Duncan* court held, clearly and unambiguously, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, *he must say so*, not only in federal court, but in state court." *Id.* at 365-366. As clarified more recently in *Baldwin v. Reese*, a decision focusing upon the requirement of a "fair presentation" of a petitioner's claims in state court, the Supreme Court held that ["a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" 541 U.S. 27, 32 (2004).

Like Reese, Petitioner did not "fairly present" the federal dimension of his claims – the brief he filed in the state appellate court did not indicate in any way that Petitioner was

complaining about violations of federal law, *see* Dkt. 7, Ex. 1 at 22-48. The burden of "fairly presenting" the federal aspects of a petitioner's claim in state court rests with the petitioner.

The Court concludes that Petitioner has failed to satisfy the requirement that he give the state courts an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. at 365).

In this circuit, the courts follow the "familiar principle that federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999). Here it would be futile to dismiss this case to give Petitioner the opportunity to exhaust the federal dimension of these claims because they could have and should have been raised on direct appeal. *See* Fla. R. Crim.P. 3.850(c);[2] *Maharaj v. State*, 684 So.2d 726 (Fla. 1996). Because Petitioner did not present his federal claims to the highest state court, they have not been exhausted and are now procedurally barred in state court. Where, as here, "the petitioner simply never raised [the federal dimension of] a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal." *Bailey v. Nagle*, 172 F.3d at 1303.

---

[2]Under Fla. R. Crim. P. 3.850(c), "grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal" are procedurally barred from collateral review.

The issue of exhaustion of the federal dimension of the claim is a statutory requirement which the State did not expressly waive in this case.[3] *See* 28 U.S.C. 2254(b)(3). "The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record."[4] *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (citation omitted).

As state remedies are no longer available, *see* Fla. R. Criminal. P. 3.850, Petitioner must show either "cause and prejudice" or "manifest injustice" to overcome this procedural default. *Tower v. Phillips*, 7 F.3d at 210. Petitioner offers no reason for his failure to raise the federal dimension of these claims in the state courts and the Court discerns none that would amount to good cause to overcome his default. Nothing in the record suggests that a miscarriage of justice will occur if the Court does not reach the merits of these claims. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Because Petitioner fails to proffer "specific facts which support a finding that one of the exceptions to the procedural default rule exists,"

---

[3]Based on Petitioner's assertion in his appellate brief that references to the victim as mentally disabled denied him "a fair trial," Respondent states that "Ground Two is *arguably* exhausted as a federal claim." The Court does not consider Respondent's statement to be an *express* waiver of the exhaustion requirement. *See Thompson v. Wainwright*, 714 F.2d 1495, 1508 (11th Cir. 1983) (holding that "a district court in its discretion may accept the waiver of exhaustion in a habeas case as to any one or more issues or may reject it"); *Davis v. Campbell*, 608 F.2d 317, 320 (8th Cir. 1979) ("[N]either concession nor waiver relieves the federal court of its responsibility to decide only those habeas claims which Congress has authorized it to hear under s 2254(b)").

[4]Here, in summarizing his argument on direct appeal, Petitioner asserted that "[t]he trial court also erred in permitting the prosecutor to elicit testimony. . . that [Petitioner] did not answer police questions. This violated [Petitioner's] *right to remain silent . . . .*" (emphasis added). He further argued that "[d]uring trial and closing argument, the prosecutor asked improper questions and made numerous improper statements to the jury which *denied [Petitioner] a fair trial*" (emphasis added). Dkt. 7, Ex. 1 at 20-21; 41. Petitioner asserted that "[i]nasmuch as Ms. Valdez's credibility was a major issue at trial and it was a jury question whether or not a rape actually occurred, the trial court's decision to permit the state to introduce evidence and testimony which referred to Ms. Valdez as 'mentally handicapped' and as a 'victim' took this issue from the jury, thereby *depriving [Petitioner] of a fair trial*" (emphasis added). *Id.* at 28. Finally, Petitioner argued that "[t]he totality of the [prosecutor's] comments reached to the very heart of this case and, therefore, utterly destroyed [Petitioner's] most important right under our system, the *right to the essential fairness of his criminal trial*" (emphasis added). *See id.* at 47. Petitioner never, however, cited any United States Supreme Court or federal appellate court cases in support of the issues he raised, relying instead on state court opinions to argue state law claims under state law standards. *See McNair, supra,* at 1303-04.

*Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of these claims. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995). Grounds One, Two, Three, Four, and Five are procedurally barred from review in this Court.

**Ineffective Assistance of Counsel**

The remaining claims raised by Petitioner are premised on the Sixth Amendment right to effective assistance of counsel. Each of Petitioner's complaints relates to representation during his second trial. Petitioner's ineffective assistance of counsel claims were exhausted in state court in his Rule 3.850 motion.

To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, *see Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

In its order directing the State to respond to Petitioner's Rule 3.850 motion, the trial court set forth the two-prong test enunciated in *Strickland* as the standard of review for Petitioner's ineffective assistance of counsel claims. *See* Dkt. 7, Ex. 8 at 2.  In its April 10, 2001 order denying Petitioner's Rule 3.850 motion, the trial court adopted and incorporated the State's response, finding that Petitioner was not entitled to post-conviction relief.  In said response, the State relied on the *Strickland* standard in support of its argument that Petitioner's claims lacked merit (Dkt. 7, Ex. 9 at 3, 5, 17, 26).  Thus, to be entitled to relief under § 2254, Petitioner must establish that the trial courts's application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lack merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

## Ground Six

In Ground Six, Petitioner faults trial counsel for failing to object and renew motions in limine precluding the State from introducing evidence or testimony referring to Selene Valdez as a "victim" or "mentally disabled."   In both the Florida and Federal system, a decision whether to grant a motion in limine is a discretionary one.  *See Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("The ruling is subject to change when the case unfolds. . . . Indeed even if nothing unexpected happens at trial, the district judge is free . . . to alter a previous *in limine* ruling."); *see also Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1503 (11th Cir. 1985) (citing *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980)); *McCallister v. State*, 779 So.2d 615, 616 (Fla. 5th DCA 2001); *Donley v. State*, 694 So.2d 149 (Fla. 4th DCA 1997). The trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory -- "tentative or preliminary in nature." *Luce*, 469 U.S. at 41.  The ruling can be changed as the trial proceeds.

In Florida, the trial court has discretion in determining whether to rule on a motion in limine prior to trial or to rule on the admissibility of the evidence when it is actually offered. *See Blackburn v. State*, 314 So.2d 634, 640 (Fla. 4th DCA 1975). This recognizes that a trial judge should not be required to guess that a generally phrased pretrial objection is still valid in the shifting pattern of the actual trial. *Id.* See *also Hawker v. State*, __ So. 2d __, 2007 WL 675470 (Fla. 4th DCA Mar. 7, 2007) ("The shifting sands of the trial in progress may cause a judge to rethink an earlier evidentiary ruling based on a maturing understanding of the case.").

Here, trial counsel renewed the motion in limine prior to commencement of the trial. At that time, the prosecutor assured the trial court that he did not intend to refer to Ms. Valdez as a victim during testimony, but that he might use that term during closing argument. The trial court accepted the prosecutor's stipulation without objection by trial counsel.

As to references to Ms. Valdez's "mental disability," the trial judge who presided over Petitioner's first trial granted, in part, trial counsel's motion in limine to exclude testimony regarding the victim's mental condition. When Petitioner proceeded to his second trial, the case had been reassigned to a new judge.  When the prosecutor asked the victim's sister whether she was familiar with any mental problem that her sister might have, trial counsel objected on grounds of hearsay, relevance, and the motion in limine (Dkt. 7, Ex. 17, Vol. VI at Tr. 213). During the bench conference that followed, trial counsel renewed the motion in limine and again objected to any testimony regarding the victim's mental condition. *Id.* at Tr. 211-216. Trial counsel argued that the basis for the motion in limine was not to exclude testimony regarding the victim being a "slow learner," but rather that there was "no documentation she's ever been diagnosed with having mental or emotional [sic] other than her being from a slow learning class and that was established yesterday. . . . I don't think its

relevant either, Judge.  We would make an oral motion in limine to preclude him going into that unless there's an issue of competency and that hasn't been established." *Id.* at Tr. 214. The trial court ruled that "[t]he witness's ability to perceive and recall is always relevant. We're not going to get into any technical testimony, that would be hearsay, but [the sister] can describe what she knows of her own personal knowledge and that will be all." *Id.* at 214-15.  Trial counsel made a standing objection to the testimony, objected each time the victim's mental condition was put at issue, *id.* at 215-16, 252, and renewed his objection in the motion for new trial, *see* Dkt. 7, Ex. 17, Vol. I at R. 105-110, albeit unsuccessfully, *see* Dkt. 7, Ex. 17, Vol. X at Tr. 744.  Trial counsel is not ineffective for failing to prevail on this issue.

The state court's adjudication of this claim did not result  in an unreasonable application of Supreme Court precedent.

## Ground Seven

Next, Petitioner alleges that trial counsel was ineffective for failing to investigate and present testimony to support Petitioner's assertion at trial that the bruises on his body when he was arrested were the result of a May 10, 1998 car accident rather than a struggle with the victim on June 1, 1998. Petitioner faults trial counsel for failing to call his treating physicians, Dr. John Dunne and Dr. Richard White, as expert witnesses to refute testimony by the State's expert that the bruises on Petitioner's face were "less than a week old. . . and most likely, two days old."

The record refutes Petitioner's claim. In addition to introducing Petitioner's medical records into evidence, *see* Dkt. 7, Ex. 17, Vol. VIII at Tr. 547, trial counsel adduced testimony from Petitioner's son and Petitioner's cohabitant Elida Vasquez that the bruises depicted in the photograph were the result of the automobile accident. *Id.* at Tr. 541-544; 574-577. Thus, testimony  by his treating physicians regarding the injuries Petitioner suffered as a result of

the car accident would have been cumulative. Trial counsel is not ineffective for failing to present cumulative evidence.

This Court concludes that the trial court's rejection of Petitioner's claim is not contrary to, or an unreasonable application of, Supreme Court law. *See* 28 U.S.C. § 2254(d). The decision is, therefore, entitled to deference from this Court. *Id.* Accordingly, this claim must be denied.

## Ground Eight

In Ground Eight, Petitioner contends trial counsel was ineffective for presenting two defenses to the jury – alibi and consensual sex -- and making statements during closing argument that he alleges was harmful to his cause. According to Petitioner, the "consensual sex" theory directly conflicted with his alibi defense.

In support of Petitioner's alibi defense, trial counsel presented three witnesses who testified that Petitioner could not have entered the victim's trailer and sexually assaulted her on June 1, 1998, because he was with them all day. Trial counsel also had to offer a plausible innocent explanation for the presence of Petitioner's DNA on the victim's panties. Trial counsel set out his strategy in his opening statement, informing the jury that the evidence would show that the victim craved attention and Petitioner gave her that attention:

> Over a period of time, the evidence will be that she was receptive to his attention. And the evidence will be that they did have a romantic relationship of a type. The evidence will be, in fact, from eyewitness testimony, that Mr. Chappa's son, own son, saw with his eyes the two together the day before the alleged story happened, and the son will testify that he saw basically the legs of Miss Valdez around . . . his father. . . .
>
> The evidence will also be that, as it turned out, Miss Valdez who had not been getting a lot of attention . . . fell in love with [Petitioner] but alas, it was not one that was to be for [Petitioner] said that he would not be with her, that [Petitioner] did have a wife and he would not leave his wife for her. And on that day that he told her that, the story came about.

> Now, the story that Miss Valdez will tell you is not corroborated.  In fact, on June 1st, [Petitioner] was with people during the time when this alleged rape was said to have happened. . . . He had been with her the day before, but not on the day when the alleged rape occurred.

Dkt. 7, Ex. 17, Vol. V at Tr. 115-119.

Trial counsel did present testimony by Petitioner's son that he observed Petitioner and the victim embracing and kissing on May 31, 1998, the day before the alleged attack occurred. Trial counsel offered this as an explanation for the crime laboratory's conclusion that DNA evidence found on the victim's panties was consistent with Petitioner's DNA.  Trial counsel reasoned that the victim, a "scorned lover," falsely accused Petitioner of raping her the day she learned that Petitioner would not leave his wife to be with her (Dkt. 7, Ex. 17, Vol. V at Tr. 116, 119).

In closing argument, trial counsel continued to attempt to persuade the jury that the alleged sexual battery never occurred, arguing as follows:

> I told you in the beginning that this would be a case of a young person who had troubles, who basically was lonely, that [Petitioner] befriended her, and that the story that she gave was one which is not corroborated by the physical evidence and the DNA.  It supports our story as much as the story that Miss Valdez would have you believe.  And also we told you that her story would change in significant areas.
>
> . . . . .
>
> However, in one day, thing can change.  If one's hopes are very high, they can be hurt.  Sometimes if a dream is broken, and that one was, and between May 31st when she was seen kissing [Petitioner] and June 1st, when she made this allegation which is not true, something happened.  And we submit to you that the promises that [Petitioner] made or the hopes in her mind of the promises did not come to fruition, did not happen, that [Petitioner] continued to be with his wife, girlfriend, who he lived with for five years and that he did not move with [the victim] and that he did not make her his girlfriend, to have his children, to marry and then the love turned to hate.

Dkt. 7, Ex. 17, Vol. IX at Tr. 626; 632.

Trial counsel's argument that Petitioner and the victim had been together *prior* to the day of the offense "in a consensual nature," *see id.* at Tr. 117, 119, did not undermine Petitioner's alibi defense or admit that he sexually battered the victim. Trial counsel's performance was clearly objectively reasonable under prevailing professional norms. *Strickland*, 466 at 688.

The Court finds that Petitioner has failed to establish that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). This claim, therefore, lacks merit.

## Ground Nine

In Ground Nine, Petitioner argues that trial counsel was ineffective in failing to file a pretrial motion for a *Frye*[5] hearing on the admissibility of the State's DNA evidence or, alternatively, have a DNA expert appointed to challenge and contradict the testimony of State's witness Dr. Martin L. Tracey, a biologist with an expertise in DNA and population genetics. The Florida Supreme Court has recognized that the DNA testing process consists of two distinct steps. The first step relies on principles of molecular biology and chemistry to indicate that two DNA samples match or look the same. *See Brim v. State,* 695 So.2d 268, 269 (Fla. 1997). The second step uses statistics to estimate the frequency of the profile in the population.  *Id.* at 269-70.

In Florida courts, the first step of the DNA testing process satisfies the *Frye* test if the laboratory has followed accepted testing procedures that meet the *Frye* standard to protect

---

[5]*See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Under Florida law, a *Frye* hearing is utilized in order to determine if expert scientific opinion is admissible. *See Flanagan v. State,* 625 So.2d 827, 829 (Fla. 1993). An "expert scientific opinion" must be based on techniques that have been "general[ly] accept[ed]" by the relevant community and found to be reliable. *Frye,* 293 F. at 1014.

against false readings and contaminations.   *See Hayes v. State,* 660 So.2d 257 (Fla. 1995)

(taking judicial notice that DNA methodology conducted properly would satisfy the *Frye* test)*;*

*see also Murray v. State,* 692 So.2d 157, 161 (Fla. 1997). During trial, Melissa Suddeth, a

crime laboratory analyst employed by the Florida Department of Law Enforcement ("FDLE"),

testified, without objection, regarding the procedures employed in conducting the DNA tests

on the victim's underwear. When the prosecutor asked Suddeth about the results of the DNA

testing, however, trial counsel objected, citing *Frye*. When the objection was overruled, trial

counsel requested a standing objection to Suddeth's testimony (Dkt. 7, Ex. 17, Vol. VII at Tr.

451).   Acknowledging that a stain on the victim's bra was consistent with blood from the

victim, Suddeth further testified that a small stain on the victim's panties revealed that the

stain had all the indications of blood and contained DNA consistent with the DNA of both the

victim and Petitioner.

The prosecutor then called Dr. Tracey to the stand.  According to Dr. Tracey, he had

testified as a population geneticist in between 150 to 200 cases over the previous 10-12

years, including several cases tried in the Thirteenth Judicial Circuit Court, Hillsborough

County, Florida.  Dr. Tracey testified extensively about his professional background and the

process by which he conducted his statistical analysis in determining the population

frequency of a sample. When the prosecutor asked Dr. Tracey about the statistical frequency

for the profile developed in the first stage of the DNA testing in the instant case, trial counsel

renewed his *Frye* objection, albeit unsuccessfully, and again requested that the trial court

recognize the defense's standing objection to the DNA testimony (Dkt. 7, Ex. 17, VIII at Tr.

516). Trial counsel further objected, without success, citing *Frye*, when Dr. Tracey testified

regarding population frequency differences. *Id.* at 523.

Thus, Petitioner's claim that trial counsel was ineffective for failing to move for a *Frye* hearing on the DNA testimony is refuted by the record. While trial counsel could have moved for the *Frye* hearing before the trial commenced, it is well-settled that "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)); *see also Cherry v. State*, 659 So.2d 1069 (Fla. 1995) (finding that while in hindsight there may have been more that trial counsel could have done, this does not mean that trial counsel's performance was deficient).

As to Petitioner's complaint that trial counsel was ineffective in failing to hire a DNA expert to test the accuracy of the State's DNA evidence, this claim is facially insufficient to warrant habeas relief. Petitioner has presented nothing to show that the tests were, in fact, inaccurate. He merely speculates that had trial counsel presented testimony by a DNA expert that testimony would support his contention that when the victim's underwear was tossed in the dirty laundry, it "probably" came into contact with an article of clothing belonging to either her brother or father, both of whom are, like Petitioner, Hispanic. Thus Petitioner posits, the blood found on the victim's panties belonged to either her brother or her father rather than Petitioner. Likewise, Petitioner's speculation that the DNA procedures utilized by the FDLE laboratory "probably" resulted in contamination of the samples before the tests were performed is too tenuous to support a claim of ineffective assistance of counsel.

Here, absent any evidence offered to suggest the unreliability of the analysis of mixed samples of DNA evidence, the sworn testimony of the State's forensic expert that the analysis of mixed samples of DNA was accomplished following the procedures recognized in the scientific community stands unrebutted.

Finally, Petitioner further attempts to discredit Dr. Tracey's testimony because he ran the population frequency tests on a database created and maintained by the Federal Bureau of Investigation ("FBI"), alleging that Dr. Tracey could not qualify as an expert under *Frye* because he lacked sufficient personal knowledge of the database on which he relied in calculating the population frequency statistics. As demonstrated by Dr. Tracey's testimony, although he did not participate in the creation of the FBI database he used in his statistical analysis, he was familiar with samples from which the database was created. *Id.* at Tr. 510-11. *See Butler v. State*, 842 So.2d 817, 828 (Fla. 2003) ("[The] assembly or creation of the database is not necessary to testify to the results") (citing *Murray v. State*, 692 So.2d 157, 164 (Fla. 1997)).

Petitioner does not sufficiently identify the expert witness that trial counsel should have been called to testify or the substance of that witness's testimony. The Court is left to speculate what negative cross-examination or rebuttal witnesses would have been available to counter the DNA testimony. Under Florida law, "[a] defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective. . . . The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the [Petitioner]." *Kennedy v. State*, 547 So.2d 912, 913 (Fla. 1989). *See also LeCroy v. Dugger,* 727 So.2d 236, 240-41 (Fla. 1998). Likewise, unsupported allegations, conclusory in nature and lacking factual substantiation, are insufficient under the *Strickland* standard to support granting Petitioner the relief he seeks in this Court. *See Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991). When a petitioner asserts that trial counsel was ineffective, he bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and

that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  *See Strickland*, 466 U.S. at 686-87. Here, Petitioner has failed to satisfy this burden.

The issues Petitioner raises in his reply to the response regarding the reliability of the FDLE database were raised in his Motion to Temporarily Stay the Proceedings to allow him to return to state court to exhaust a claim of "newly discovered" evidence that allegedly establishes that the DNA evidence presented during his trial was unreliable, *see* Dkt. 22. The Court rejected this argument in denying Petitioner's motion for a stay because Petitioner's offense of conviction occurred on June 1, 1998, and his conviction was entered following a jury trial on May 14, 1999.  Since the FDLE's database was not placed in service until 2000, this Court concluded that the deficiencies about which Petitioner complains are not material to his conviction, *see* Dkt. 24.  Petitioner has not provided any basis for revisiting that decision. The decision in *Bevil v. State* is unavailing to Petitioner's cause.  875 So.2d 1265 (Fla. 1st DCA 2004).[6]

To the extent that Petitioner complains that all of the sample from the victim's panties was used by the FDLE in conducting its tests, the Florida Supreme Court has previously held that if evidence is lost or totally consumed during testing, the burden is on the defendant to show bad faith by the State in failing to preserve evidence. See *King v. State,* 808 So.2d 1237, 1242-43 (Fla.2002) (citing *Arizona v. Youngblood,* 488 U.S. 51 (1988)). Petitioner does

---

[6]Bevil, the defendant in a sexual battery case, prevailed on a motion to suppress the state's DNA evidence on grounds that the FDLE database used to compute DNA population frequencies relied on by the State's expert witness was known to produce inaccurate results. Bevil's offense of conviction occurred in 2001. During the *Frye* hearing conducted on January 7, 2002, Bevil adduced testimony by the FDLE analyst who performed the DNA testing that the FDLE's population database was validated by an independent consultant in 1999, and FDLE first began using it to compute DNA population frequencies in 2000. The analyst and the FDLE's forensic service director testified, however, that the independent consultant subsequently discovered errors in the database which caused the FDLE to discontinue using it pending the completion of a reexamination of the program.  When Bevil proceeded to trial, the reexamination of the database was not yet completed.

not argue that the FDLE laboratory acted in bad faith in failing to preserve a portion of the sample.

Petitioner has failed to show either deficient performance or prejudice caused by the alleged error of trial counsel. *See Strickland*, 466 U.S. at 487; *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995). The Court concludes that the trial court's decision on this claim of ineffective assistance of counsel is a reasonable application of the two-prong test enunciated in *Strickland*, 466 U.S. at 687.

**Ground Ten**

In Ground Ten, Petitioner alleges that trial counsel was ineffective in failing to prepare for trial by becoming familiar with the record and the facts of his case. Petitioner and Eduardo Valdez, the victim's brother, worked together. Mr. Valdez testified for the State at both of Petitioner's trials. The crux of Petitioner's complaint is the State's failure to disclose that it would present testimony by Mr. Valdez during the second trial that Petitioner left work early on the day in question because he was drunk (Dkt. 7, Ex. 17, Vol. VI at Tr. 268).[7] Upon hearing Mr. Valdez's testimony, trial counsel objected.

During the ensuing bench conference, trial counsel stated: "I'm going to indicate that I believe that's a discovery violation, that I'm not aware of hearing or reading that testimony before concerning the alleged drunkenness of my client." *Id.* Trial counsel argued that testimony "concerning the alleged drunkenness" was material because it "goes [to Petitioner's] likeliness to do something which he would not ordinarily do." *Id.* at 269. Trial counsel further argued that the defense was prejudiced because he "wasn't able to go

---

[7]In support of this claim, Petitioner cites the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."). Because the evidence was revealed during the trial, *Brady* is not applicable to the analysis of Petitioner's claim.

through this in jury selection having not known this information." *Id.* The prosecutor argued that there was no discovery violation because the information was in the police reports.  He informed the trial court that Mr. Valdez, having been deposed, testified during the first trial and was included on the State's witness list for the second trial. The trial court overruled trial counsel's objection.  *Id.* at 269.

According to Petitioner, he was prejudiced by trial counsel's failure to prevail on the discovery objection because Mr. Valdez's testimony "allowed the jury to be persuaded that it would be more likely or believable for a drunk individual to have committed a sexual battery" (Dkt. 1 at 13K). Petitioner's ineffective assistance of counsel claim is foreclosed by the Florida Supreme Court's decision in *Bush v. State*, 461 So.2d 936, 938 (Fla. 1984). When Petitioner proceeded to trial on May 12, 1999, the Florida Supreme Court had held that unlike failure to name a witness, changed testimony[8] by a witness did not rise to the level of a discovery violation. *Id.* As explained in *Bush*:

> When testimonial discrepancies appear, the witness' trial and deposition testimony can be laid side-by-side for the jury to consider. This would serve to discredit the witness and should be favorable to the defense. Therefore, unlike failure to name a witness, changed testimony does not rise to the level of a discovery violation.

*Id.*

In a decision entered on October 5, 2000, seventeen months after Petitioner's convictions were entered, the Florida Supreme Court revisited this issue, addressing the

---

[8]Respondent's assertion that Mr. Valdez's testimony regarding the reason Petitioner left work early on the morning the offense of conviction occurred was not a change in testimony because when Mr. Valdez testified during Petitioner's first trial, he was not asked about Petitioner's reason for leaving work early lacks merit.  While Mr. Valdez did not testify during the first trial regarding the reason Petitioner left work early (Dkt. 7, Ex. 17, Vol. III at 263-274), the police report reflects that when interviewed, Mr. Valdez told the investigating officer that when Petitioner "left the job at approx. 0930. . . . He stated he was not feeling well" (Dkt. 7, Ex. V thereto). Based on the prosecutor's argument during the bench conference, the police reports had been made available to trial counsel. Mr. Valdez testified during the second trial that on the day the victim was attacked, Petitioner left work early because he was drunk, which was clearly different than the statement he gave the investigating officer (Dkt. 7, Ex. 17, Vol. VI at Tr. 268). *See Bush v. State,* 461 So.2d at 938.

discrepancy between a witness's statement to the police and her deposition testimony that she "didn't see anything" and her testimony at trial that she had actually seen the defendant shoot the victim. *State v. Evans,* 770 So.2d 1174 (Fla. 2000).  The *Evans* decision "clarified" that "statements in *Bush* regarding changed testimony . . . cannot be extended to situations where the changes in a witness's testimony include a reference to an oral statement allegedly made by the defendant."

> To the extent that our determination here may be interpreted as being inconsistent with our "changed testimony" statements in *Bush,* we clarify that our statements in *Bush* do not control in situations where the State provides the defendant with a witness's "statement"– as that term is defined in Rule 3.220(b)(1)(B) – and thereafter fails to disclose to the defendant that the witness intends to change that statement to such an extent that the witness is transformed from a witness who "didn't see anything" into an eyewitness who observed the material aspects of the crime charged.

770 So.2d at 1179. Clearly, Mr. Valdez's "change" in his testimony related to Petitioner's oral statements on the morning of the offense of conviction, but prior to *Evans*, the Florida Supreme Court decision in *Bush* was controlling on this issue. *See Breedlove v.* Moore, 279 F.3d 952, 963 (11th Cir. 2002) ("The Florida Supreme Court is the final arbiter of Florida . . . law; federal courts must respect that law absent a constitutional violation.") (citing *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996)).  Given controlling precedent in Florida courts when Petitioner's trial commenced, even if trial counsel's familiarity with the record was such that he could recite the record, page and line, from memory, under *Bush*, trial counsel had little, if any, chance of prevailing on his objection. Nonetheless, trial counsel zealously argued to exclude Mr. Valdez's "changed" testimony, and when his efforts proved unsuccessful, he vigorously cross-examined Mr. Valdez, using his failure to testify during the first trial regarding Petitioner's sobriety to impeach his testimony during the second trial.

Further, Petitioner does not dispute that he left work early the day the victim was attacked. It is not material whether Petitioner left work because he was ill or intoxicated – given the nature of the charged offenses, such evidence could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Having failed to show that the outcome of the trial would have been different had trial counsel known of this testimony before trial, Petitioner cannot meet the prejudice prong of the *Strickland* test.

Referring to the discussions during the bench conference as a *Richardson* inquiry, *see supra* n.1, Petitioner asserts that the prosecutor misled the trial court by misstating the record in support of his position. Contrary to Petitioner's assertion otherwise, the prosecutor's statement that Mr. Valdez was listed as a State witness in its June 29, 1998 discovery response and on the witness list it provided to trial counsel before each trial accurately reflects the record, *see* Dkt. 7, Ex. 17, Vol. I at R. 27, 70.

Petitioner further contends that the prosecutor's statement that Mr. Valdez had been deposed was incorrect. Petitioner has not produced any support for this assertion. While the state court docket reflects that trial counsel filed notices of deposition on September 24, 1998, November 17, 1998, and January 6, 1999,[9] copies of the notices are not included in the state record. Since a resolution of this issue is not, however, critical to the Court's analysis of this claim, an expansion of the record is not required.

Finally, Petitioner speculates that Mr. Valdez's testimony "persuaded" the jury that he sexually battered the victim. Mere speculation is not sufficient to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Moreover, Petitioner has not established that, given

---

[9]The Court takes judicial notice of information available on the database maintained by the Clerk of Court, Thirteenth Judicial Circuit, Hillsborough County, Florida, http://www.hillsclerk.com, viewed on March 17, 2007, *State v. Chappa*, Case No. 98-CF-009564 (Fla. 13th Jud. Cir. Ct. 1999). *See* Fed. R. Evid. 201.

the victim's testimony that he was the individual who battered her, there is a reasonable likelihood that if Mr. Valdez's testimony that Petitioner was drunk on the morning the offense of conviction occurred were excluded or rebutted, the result of the trial would have been different. Thus, Petitioner cannot satisfy either prong of the *Strickland* test.

Petitioner has failed to demonstrate that the trial court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Petitioner cannot prevail on this claim.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 27, 2007.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Parties/Counsel of Record

SA:jsh